UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DANYELL THOMAS,

             Plaintiff,

v.

SARAH SCHROEDER et al.,

             Defendants.

_____/

Case No. 2:24-cv-90

Honorable Robert J. Jonker

## <u>OPINION</u>

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2).

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schroeder, Ekholm, Leach, Allen, and Bush. The Court will also dismiss, for failure to state a claim, the following claims against Defendant Vereb: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims

for declaratory relief; and (3) Plaintiff's Eighth Amendment excessive force claims. The following personal capacity claims remain against Defendant Vereb: (1) Plaintiff's First Amendment retaliation claim; and (2) Plaintiff's Eighth Amendment deliberate indifference claim premised upon the denial of medication.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues the following MBP employees in their official and personal capacities: Warden Sarah Schroeder, Inspector Unknown Bush, Captain Unknown Leach, Sergeant Unknown Allen, Correctional Officer Unknown Ekholm, and Nurse James Vereb.

 Plaintiff alleges that on February 22, 2023, he was sitting on his bunk watching television with a pair of headphones. (Compl., ECF No. 1, PageID.3) Plaintiff had his back toward the bars of the cell. (*Id.*) He was "suddenly struck in the head by a hard object which caused a stinging sensation and pain throughout Plaintiff's head and neck area." (*Id.*) Plaintiff then noticed a crumpled paper cup with several pills inside laying on the sink. (*Id.*)

Plaintiff saw Defendants Vereb and Ekholm standing outside his cell, and he asked Defendant Vereb if he had thrown the pills at him. (*Id.*, PageID.4.) Defendant Vereb became very aggressive and said, "I did throw the pills. What the f*** are you going to do about it[, you're] locked up!" (*Id.*) Plaintiff asked Defendant Vereb to leave. (*Id.*) Defendants Vereb and Ekholm walked off, and Defendant Vereb continued to "yell obscenities" towards Plaintiff. (*Id.*) After they were a few cells away, Defendants Vereb and Ekholm turned around and came back to Plaintiff's

2

cell, where Defendant Vereb "became more aggressive and verbally abusive[,] then started to make gestures towards" Plaintiff. (*Id.*) Plaintiff asked them to leave, and they did again. (*Id.*) However, Defendants Vereb and Ekholm turned around again, stood in front of Plaintiff's cell, and Defendant Vereb spit on Plaintiff's face. (*Id.*)

Plaintiff reached through the cell bars to try to "detour any further assault." (*Id.*) Defendant Vereb walked away, and Plaintiff asked Defendant Ekholm why he had not stopped Defendant Vereb from coming back to Plaintiff's cell. (*Id.*) Defendant Ekholm responded, "I [saw] what happened[;] what am I supposed to do about it." (*Id.*)

Shortly thereafter, Defendant Allen came to Plaintiff's cell with other unknown officers. (*Id.*) He told Plaintiff that Defendant Vereb was writing a misconduct report and trying to have Plaintiff moved to segregation. (*Id.*) Plaintiff told Defendant Allen that he had been assaulted by Defendant Vereb. (*Id.*) Defendant Allen told Plaintiff that he would look at the surveillance camera footage and talk to Defendant Ekholm "to further investigate what had [taken] place." (*Id.*) Defendant Allen and the officers then left Plaintiff's cell. (*Id.*, PageID.5.)

Several minutes later, Defendant Allen and the officers returned to Plaintiff's cell. (*Id.*) Defendant Allen told Plaintiff that because Defendant Vereb had written a misconduct, Defendant Leach wanted Plaintiff taken to segregation. (*Id.*) Defendant Allen told Plaintiff that there was nothing he could do about Defendant Vereb's "assaultive conduct." (*Id.*)

Plaintiff was handcuffed and taken to segregation. (*Id.*) Once there, Defendant Allen reviewed the misconduct with Plaintiff. (*Id.*) Defendant Allen told Plaintiff that Defendant Vereb admitted to assaulting Plaintiff and that Plaintiff should keep a copy of the misconduct. (*Id.*) Plaintiff was kept in segregation for five days until he had a misconduct hearing. (*Id.*) Non-party hearings officer Thomas Mohrman found Plaintiff guilty. (*Id.*)

On February 27, 2023, Plaintiff sent a kite to Defendants Schroeder and Bush informing them about Defendant Vereb's actions. (*Id.*) He did not receive a response. (*Id.*) The next day, Plaintiff filed a grievance about the incident. (*Id.*)

On March 2, 2023, Defendant Vereb and an escorting officer came to Plaintiff's cell during med line and demanded that Plaintiff get on his knees and place his hands on the wall to receive his medication. (*Id.*) Plaintiff refused and was denied his medication. (*Id.*)

On March 8, 2023, Defendant Vereb came to Plaintiff's cell during med line, told Plaintiff to "have a nice night," and placed an empty paper cup on the cell's food slot. (*Id.*) Plaintiff did not receive his psychiatric medication. (*Id.*)

Two days later, Plaintiff spoke to his psychologist about not receiving his medication and about the assault by Defendant Vereb. (*Id.*, PageID.6.) The psychologist told Plaintiff that he would look into the issue. (*Id.*)

Plaintiff alleges that Defendant Vereb continued to harass him and deny him his medication. This occurred on March 11, 12, 14, 15, 17, 21, 23, and 27, 2023. (*Id.*) Plaintiff alleges that on March 14, 2023, Defendant Vereb told Plaintiff, "Write your little grievance let's see if you get your meds." (*Id.*)

Plaintiff states that he spoke directly to Defendant Schroeder about the issue on March 30, 2023. (*Id.*) Defendant Schroeder told Plaintiff that "everything was being investigated and [Defendant] Vereb would not be allowed to pass out medication in the unit." (*Id.*, PageID.7.) Plaintiff alleges that because he missed several days of his medication, he experienced "significant schizophrenic outburst[s]" and went days without sleep. (*Id.*)

Based on the foregoing, Plaintiff asserts the following claims: (1) an Eighth Amendment excessive force claim against Defendant Vereb; (2) an Eighth Amendment deliberate indifference

to medical needs claim against Defendant Vereb; (3) Eighth Amendment and Fourteenth Amendment equal protection claims against Defendant Schroeder for failing to act in response to Plaintiff's kite and grievance; (4) Fourteenth Amendment claims against Defendants Schroeder, Allen, Leach, Bush, and Ekholm for failing to act; and (5) a First Amendment retaliation claim against Defendant Vereb. (*Id.*, PageID.7–9.) The Court also construes Plaintiff's complaint to assert an Eighth Amendment failure to intervene claim against Defendant Ekholm. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.9.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Official Capacity Claims

As noted above, Plaintiff has sued Defendants in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*,

6

803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks damages, as well as declaratory relief stating that Defendants violated Plaintiff's rights under the First, Eighth, and Fourteenth Amendments. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

An official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, however, Plaintiff has been transferred from MBP to JCF. The Sixth Circuit has held that transfer to another prison facility moots claims for declaratory and injunctive relief. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying the rule is the premise that such relief is appropriate only

where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495– 96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96. Even if Plaintiff remained at MBP, he would not be entitled to relief because the declaration he requests is in no way prospective. Plaintiff simply asks the Court to declare that Defendants' past actions violated the Constitution. Such a retrospective request does not fit within the *Ex Parte Young* exception to sovereign immunity.

For all of these reasons, Plaintiff cannot maintain any official capacity claims for declaratory relief against Defendants. Accordingly, his official capacity claims will be dismissed in their entirety.[1]

### B.    Personal Capacity Claims

#### 1.    First Amendment Retaliation

Plaintiff contends that Defendant Vereb retaliated against him, in violation of the First Amendment by refusing to give Plaintiff his mental health medication on several occasions. (Compl., ECF No. 1, PageID.9.) Plaintiff alleges that Defendant Vereb denied his medication on those occasions because of the grievance Plaintiff filed against Defendant Vereb. (*Id.*)

---

[1] To the extent Plaintiff seeks declaratory relief against Defendants in their personal capacities, such claims will be dismissed as moot and meritless as well.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Taking Plaintiff's allegations as true, as is required at this stage, Plaintiff's First Amendment retaliation claim against Defendant Vereb in his personal capacity may not be dismissed on initial review.

### 2.    Eighth Amendment Claims

Plaintiff contends that Defendants Vereb, Ekholm, and Schroeder violated his Eighth Amendment rights in various ways.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

10

### a.      Excessive Force

Plaintiff contends that Defendant Vereb used excessive force against him, in violation of the Eighth Amendment, by throwing the paper cup full of pills at Plaintiff's head and by spitting in Plaintiff's face. (Compl., ECF No. 1, PageID.7.)

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Not every shove or restraint, however, gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); see also *Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The Court asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be

'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Here, Plaintiff alleges that Defendant Vereb admitted to throwing the cup full of pills at Plaintiff's head, and that he experienced a "stinging sensation and pain." (Compl., ECF No. 1, PageID.3–4.) While such an action is certainly objectionable, it is clearly *de minimis* for purposes of the Eighth Amendment. *See, e.g.*, *Baltas v. Dones*, No. 3:22-cv-38 (MPS), 2022 WL 1239989, at *11 (D. Conn. Apr. 27, 2022) (dismissing an inmate's excessive force claim premised upon his allegation that a correctional official threw "soap, toilet paper[,] and trash" at him); *Jones v. Westbrook*, No. 1:13-cv-155-FDW, 2014 WL 1609340, at *3 (W.D.N.C. Apr. 22, 2014) (rejecting an excessive force claim premised upon the inmate's allegation that the officer threw a roll of

tissue paper at him). Plaintiff, therefore, may not maintain his Eighth Amendment excessive force claim premised upon his allegation that Defendant Vereb threw a paper cup full of pills at him.

Plaintiff alleges further that Defendant Vereb spit on his face. (Compl., ECF No. 1, PageID.4.) Intentionally spitting on an inmate is certainly repugnant. However, several courts, including the Sixth Circuit and this Court, have held that allegations that prison officials spit on an inmate do not constitute the sort of force that implicates the Eighth Amendment. *See, e.g.*, *Gill v. Tuttle*, 93 F. App'x 301, 303 (2d Cir. 2004); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1–2 (6th Cir. May 1, 2000); *Spearman v. Williams*, No. 1:17-cv-1070, 2018 WL 8369416, at *6 (W.D. Mich. July 6, 2018), *report and recommendation adopted in relevant part by* 2019 WL 1233138 (W.D. Mich. Mar. 18, 2019), *aff'd in relevant part by* 2023 WL 7000971 (6th Cir. July 17, 2023). While the Court certainly cannot condone Defendant Vereb's action, given the authority above, the Court cannot conclude that it rises to the level of an Eighth Amendment violation. Accordingly, this Eighth Amendment excessive force claim will also be dismissed.

### b.      Failure to Intervene

The Court has construed Plaintiff's complaint to assert an Eighth Amendment failure to intervene claim against Defendant Ekholm.

An officer is liable for another individual's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). Here, Plaintiff alleges that after Defendant Vereb spit on Plaintiff's face, he asked Defendant Ekholm why he did not stop Defendant Vereb from coming back to Plaintiff's cell. (Compl., ECF No. 1, PageID.4.) Defendant Ekholm responded, "I [saw] what happened[;] what am I supposed to do about it." (*Id.*)

13

As discussed *supra*, the Court has concluded that, while objectionable, Defendant Vereb's actions do not rise to the level of force that implicates the Eighth Amendment. For that reason alone, Plaintiff's cannot maintain a failure to intervene claim against Defendant Ekholm. In any event, Plaintiff does not allege any *facts* from which the Court could infer that Defendant Ekholm knew that Defendant Vereb intended to take those actions against Plaintiff. Nowhere in his complaint does Plaintiff suggest that Defendant Ekholm knew that Defendant Vereb intended to act the way he did and had "the means to prevent the harm from occurring." *Burgess*, 735 F.3d at 475. Plaintiff's conclusory allegations are simply insufficient to set forth an Eighth Amendment failure to intervene claim against Defendant Ekholm. Accordingly, that claim will be dismissed.

### c.    Denial of Medication

Plaintiff next contends that Defendant Vereb violated his Eighth Amendment rights by denying Plaintiff his mental health medication on numerous occasions. (Compl., ECF No. 1, PageID.7.)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle*, 429 U.S. at 103–04. The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well. *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at *2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock*, 273 F.3d at 702.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834 . To satisfy the objective component, the plaintiff must allege

14

that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that

he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective

component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's

need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d

890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a

sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can

be "satisfied by something less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]

plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*,

894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment

states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court

explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to
> constitute an unnecessary and wanton infliction of pain or to be repugnant to the
> conscience of mankind. Thus, a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not state a valid claim of medical
> mistreatment under the Eighth Amendment. Medical malpractice does not become
> a constitutional violation merely because the victim is a prisoner. In order to state
> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to
> evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff contends that without his medication, he suffered "significant schizophrenic outburst[s]" and went days without sleep. (Compl., ECF No. 1, PageID.7.) Certainly, mental illness can qualify as a serious medical need. Moreover, Plaintiff has set forth facts suggesting that Defendant Vereb denied Plaintiff his medication on numerous occasions after Plaintiff filed a grievance concerning Defendant Vereb's assault upon Plaintiff. Given these allegations, Plaintiff's Eighth Amendment claim against Defendant Vereb premised upon the denial of medication may not be dismissed on initial review.

### d. Failure to Act

Plaintiff next alleges that Defendant Schroeder violated his Eighth Amendment rights by failing to act in response to Plaintiff's kite and grievance concerning Defendant Vereb's assault upon Plaintiff and his failure to give Plaintiff his medication. (Compl., ECF No. 1, PageID.8.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

17

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendant Schroeder encouraged or condoned the conduct of Defendant Vereb, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff faults Defendant Schroeder for failing to act upon his kite and grievance, which is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Schroder will be dismissed.

### 3.     Fourteenth Amendment Claims

#### a.     Equal Protection

Plaintiff suggests that Defendant Schroeder violated his rights under the Fourteenth Amendment's Equal Protection Clause by failing to act upon his kite and grievance, as well as his verbal complaints, regarding Defendant Vereb. (Compl., ECF No. 1, PageID.8.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City*

*of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Here, Plaintiff wholly fails to allege any facts suggesting that he was treated differently than others, let alone that the others were similarly situated. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claim is wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, Plaintiff's Fourteenth Amendment equal protection claim against Defendant Schroeder will be dismissed.

### b.    Due Process and Handling of Complaints

Plaintiff also contends that Defendants Schroeder, Allen, Leach, Ekholm, and Bush violated his Fourteenth Amendment rights by failing to act upon Plaintiff's kite, grievance, and complaints. Although Plaintiff does not indicate under which provision of the Fourteenth

Amendment he is asserting his claim, the Court construes the complaint to assert substantive due process claims, as well as claims challenging the process used to resolve his complaints.

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Here, Plaintiff does not allege any facts showing the sort of egregious conduct that would support a substantive due process claim.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments apply to Plaintiff's claims. Accordingly, any intended Fourteenth Amendment substantive due process claims will be dismissed.

Moreover, to the extent Plaintiff takes issue with the handling of his kite and grievance, the courts have repeatedly held that there exists no constitutionally protected due process right to

an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive Plaintiff of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' rejection of Plaintiff's grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)).

Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendants based on their handling of Plaintiff's grievances.

<u>**Conclusion**</u>

The Court will grant Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2). Having conducted the review required by the PLRA, the Court will dismiss Plaintiff's complaint against Defendants Schroeder, Ekholm, Leach, Allen, and Bush for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c). The Court will also dismiss the following claims against Defendant Vereb: (1) Plaintiff's official capacity claims; and Plaintiff's personal capacity claims for declaratory relief; and (3) Plaintiff's Eighth Amendment excessive force claims. The following personal capacity claims remain against

Defendant Vereb: (1) Plaintiff's First Amendment retaliation claim; and (2) Plaintiff's Eighth Amendment deliberate indifference claim premised upon the denial of medication.

An order consistent with this opinion will be entered.


Dated: _____July 3, 2024_____          _/s/ Robert J. Jonker_____
                                            Robert J. Jonker
                                            United States District Judge